IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD G. TORREY III,<br><br>               Petitioner,<br><br>vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,[1]<br><br>               Respondent. | No. 2:11-cv-1949-JKS<br><br>MEMORANDUM DECISION |

Richard Gordon Torrey III, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Torrey is currently on supervised release and is in the custody of the California Department of Corrections and Rehabilitation, but appears to have been released. Respondent has answered, and Torrey has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On December 31, 2008, Torrey was charged by information in Count 1 with assault with intent to commit a lewd and lascivious act upon a child during the commission of a first degree burglary; in Count 2 with first degree burglary; in Counts 3, 4, and 5 with a lewd or lascivious act upon a child fourteen or fifteen years of age; and in Count 6 with sexual battery.

On March 25, 2009, Torrey entered a plea agreement in which he pled no contest to Counts 2 and 6 in exchange for dismissal of the remaining counts. He stipulated to a sentence of

---

[1]      Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for the State of California. FED. R. CIV. P. 25(c).

seven years' imprisonment.  Attached to the plea agreement is a declaration signed by Torrey in

which he initialed the following statements:

> 3. I am not suffering any mental disease or defect, which keeps me from understanding this form.  I am not now under the influence of any mind-altering substances.
> . . . .
> 8. No one has threatened or promised to reward me, my family or anyone else to get me to enter this plea.  No one has told me, or promised or suggested to me, that I will receive a lighter sentence, or probation, or any other favors to get me to enter this plea[.]
> . . . .
> 13. I am freely and voluntarily pleading no contest because in truth and in fact I am guilty or I believe the evidence is sufficient to prove my guilt at trial.

At the March 25, 2009, plea hearing, the trial court engaged Torrey and defense counsel

in the following colloquy:

| | |
|---|---|
| THE COURT: | [Defense counsel], I'm sure you've discussed this offer at length with your client. |
| [DEFENSE COUNSEL]: | I did. |
| THE COURT: | Has your client told you that he was prepared to accept this plea offer and plead . . . no contest to those two charges? |
| [DEFENSE COUNSEL]: | He completed the plea form that I put at bench side. |
| THE COURT: | I have a standard three-page plea form. |
| | Did you ask your client to read the form himself or did you read it to him? |
| [DEFENSE COUNSEL]: | I read it to him, as he was holding it.  I'm sure he followed along; is that true? |
| [TORREY]: | Correct. |
| THE COURT: | Did you answer any questions your client may have had concerning the plea offer or the sentence that would be imposed? |
| [DEFENSE COUNSEL]: | I did.  And then at the end I asked if he had any further questions, he said he did not. |
| THE COURT: | Did you discuss the fact that this is a strike offense? |
| [DEFENSE COUNSEL]: | I did. |
| THE COURT: | And the fact that the defendant will be required to register [as a sex offender] pursuant to [California] Penal Code Section 290. |
| [DEFENSE COUNSEL]: | Yes. |

| | |
|---|---|
| THE COURT: | Based on your discussions with your client, is it your belief that your client has freely and voluntarily chosen to accept this plea offer? |
| [DEFENSE COUNSEL]: | Yes. |
| THE COURT: | Mr. Torrey, I want to talk to you. |
| | Is it true that you have discussed this plea offer with [defense counsel]? |
| [TORREY]: | Yes, it is. |
| THE COURT: | Has she answered any questions you may have had concerning the plea offer itself? |
| [TORREY]: | Yes, she answered all of my questions, sir. |
| THE COURT: | Okay.  Did you, yourself, read the three-page print on the plea form? |
| [TORREY]: | Yes, I did. |
| THE COURT: | Are these your initials to the left of each of the paragraphs? |
| [TORREY]: | Yes, they are. |
| THE COURT: | After you finished reading the plea form, did you sign it near the top of the third page, the last page? |
| [TORREY]: | Yes, your Honor, I did. |
| THE COURT: | Do you have any questions concerning the information on the plea form itself? |
| [TORREY]: | No, sir. |
| THE COURT: | I want to confirm that [defense counsel] talked to you about the fact that you would be pleading to an offense that would be a strike offense; did you discuss that? |
| [TORREY]: | Yes. |
| THE COURT: | The form also notes that you'll be required to register pursuant to [California] Penal Code Section 290. |
| | Did you discuss that issue with [defense counsel]? |
| [TORREY]: | Yes, we did. |
| THE COURT: | It is my understanding that if you enter these pleas, the Court would be expected to impose, and I would impose, a seven-year prison term. |
| | Is that your understanding of what's going to happen? |
| [TORREY]: | Yes, it is, your Honor. |
| THE COURT: | Do you have any questions about anything on this plea form or anything related to the pleas to these charges? |
| [TORREY]: | No, your Honor, I don't. |

Torrey then pled no contest to both charges.  The prosecution set forth the factual basis for the plea, to which defense counsel stipulated. The court found that there was a factual basis for the plea and concluded as follows:

> I find that [Torrey] understands his constitutional rights, the nature of the crimes that are charged in the information, the specific consequences of the no contest plea; and so I conclude that [Torrey] has understandingly and voluntarily plead no contest to these two felony charges.
> It is ordered that his no contest plea and his waiver of rights should be accepted.

Sentencing was set for April 23, 2009.

On April 13, 2009, Torrey mailed to the court a letter stating that he did not in fact commit the crimes to which he pled no contest, arguing that he was pressured into taking the deal by his attorney.  According to Torrey, his attorney told him he had no chance of winning at trial and that she was not going to subpoena any of his work or mental health records or call any of his friends as witnesses.  Torrey also claimed that he suffered from depression and bipolar disorder and that he had been seeing a therapist as well as a psychiatrist and had been prescribed medication.  Torrey had stopped taking his medication which "led to a deeper depression and more irrational thinking."  Torrey claimed this was also the reason for his "5150 " (apparently a reference to California Welfare and Institutions Code § 5150, which governs temporary involuntary commitments for mental health evaluations) and his two-month medical leave from work.  Torrey thought his mental health should be addressed at sentencing.

Torrey's former mother-in-law also submitted a letter on his behalf, stating generally that he was not the sort of man who would commit such crimes.  She also mentioned that Torrey suffered from depression and bipolar disorder, that he was not receiving treatment for these conditions while he was incarcerated, and that his letters to her exhibited "severe depression."

She further stated that Torrey only signed the plea agreement because he was told it was his only

way to avoid life imprisonment and because he "was not able to make such a decision" given the

fact that he was off his medications and not being medically treated.  Torrey wanted a psychiatric

evaluation or contact with his treating physician.

The court appointed conflict counsel to represent Torrey so that he could file a motion to

withdraw his plea.  In his affidavit accompanying his motion to withdraw his plea, Torrey stated

as follows:

> I am bi-polar and suffer from depression.  Although I can understand what is going on, I
> cannot always deal with things in a rational manner.  I did not act rationally in pleading
> no contest; I did it out of fear because my attorney said that I could be sentenced to life in
> prison if I was found guilty as charged.  On further thought, I want to go to trial on the
> charges.

At the hearing on the motion to withdraw, the People called Torrey's trial counsel to

testify.  Trial counsel was not asked about Torrey's mental illness and whether in her belief that

affected his decision making process.  She testified, however, that Torrey understood the offer

and that Torrey initiated discussions about the plea on several occasions.  At one point Torrey

asked for time to think about the offer.  He also asked on a separate occasion whether the plea

would make him "SVP eligible," or eligible for sexually violent predatory treatment.  After

indicating that he wanted to accept the deal, he called his attorney again about outstanding traffic

fines but also stating that "he wasn't changing his mind" about accepting the plea.  According to

trial counsel, Torrey initially expressed "normal" reservations about accepting the offer.

Specifically, he was concerned about going to prison because he had never spent time in custody,

he did not have a prior record, the conviction would "jeopardize his being a father for a period of

time" and would also jeopardize his ability to return to work as a social worker for disabled

adults.  Trial counsel nevertheless recommended the plea deal based on the evidence, the fact that

Torrey had confessed to police, and the fact that if he did not accept the plea offer he could be

subject to life imprisonment.

Trial counsel additionally testified that she never told Torrey that he had a "zero percent"

chance of winning at trial.  Regarding subpoenaing Torrey's work and mental health records, trial

counsel had learned that there were allegations that Torrey had bragged about having sex with

other underage girls.  The prosecutor told her that the People would not seek to admit this

evidence, but it would become relevant if Torrey presented his own character evidence.

The court denied Torrey's request to withdraw his no contest plea, concluding that Torrey

"has [not] even come close to presenting clear and convincing evidence that would warrant

granting this motion."  The court noted that Torrey was anxious about the consequences of

accepting the plea offer, but that there was no evidence he was pressured into accepting the deal.

In fact, Torrey had told his probation officer that the plea offer was a "fair deal."  The court

reinstated trial counsel.

The court granted trial counsel's request to correct the Presentence Investigation Report

to indicate that Torrey suffered from depression and bipolar disorder.  The court then sentenced

Torrey to an aggregate term of seven years' imprisonment followed by three years of post-release

supervision.

Torrey appealed, arguing that 1) trial court erred in failing to hold a competency hearing

where there was reasonable doubt as to his competency at the time he moved to withdraw his

plea; 2) conflict counsel was ineffective for failing to investigate evidence of Torrey's mental

illness; and 3) the trial court erred by failing to hold a *Marsden*[2] hearing after Torrey expressed dissatisfaction with his defense counsel.

The California Court of Appeal denied Torrey's appeal in a reasoned, unpublished decision.  The appellate court concluded that Torrey's allegations did not raise a reasonable doubt regarding his competence because the mere presence of mental illness did not mean he could not understand the proceedings or assist in his own defense, and trial counsel's testimony at the hearing on the motion to withdraw demonstrated that Torrey understood the nature of the proceedings against him.  Moreover, the fact that Torrey had suggested that trial counsel pursue other witnesses and evidence "portray a defendant who could assist in his own defense."

The appellate court also denied his claim that conflict counsel was ineffective for failing to investigate mental health issues and not arguing in support of his motion to withdraw his plea. The court held that there was minimal evidence that Torrey suffered from a mental illness and compelling evidence that he was competent to stand trial.  The court concluded that "[n]othing in the record indicates conflict counsel could have found evidence [Torrey] was incompetent," and that he was not pressured into the plea and understood the consequences of the agreement.

Lastly, the appellate court denied Torrey's claim that his April 13, 2009, letter to the court was sufficient to trigger the court's duty to conduct a *Marsden* hearing, and that the court's failure to do so was prejudicial.  The court concluded as follows:

> [Torrey's] letter professed his innocence and dissatisfaction with the plea.  The letter also set forth reasons to withdraw the plea, and mitigating factors for the court to

---

[2]      *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

consider at sentencing.  The letter did not ask for counsel to be discharged, or for the appointment of new counsel.

      While a defendant is not required to make a formal motion to substitute appointed counsel, there must be some clear indication that substitution is the desired remedy. Defendant never suggested he wanted a substitution of appointed counsel based on ineffective representation.  Expressions of only retrospective dissatisfaction with the adequacy of trial counsel's representation, without any indication of a desire for new representation, does not trigger the obligation to hold a *Marsden* hearing.

On January 6, 2012, Torrey filed a petition for review in the California Supreme Court, arguing that: 1) "review should be granted to determine whether the due process clause of the Fourteenth Amendment . . . required the trial court to hold a competency hearing when there was substantial evidence sufficient to raise a reasonable doubt as to appellant's competence"; and 2) "review should be granted to determine whether the Sixth Amendment . . . requires a trial court to hold a *Marsden* hearing when the record shows . . . that a defendant has expressed dissatisfaction with his counsel."  The California Supreme Court summarily denied Torrey's petition for review.

    Torrey did not file any petitions for writ of habeas corpus in the state courts.  Torrey timely filed his Petition for Writ of Habeas Corpus with this Court on July 19, 2011.

## II. GROUNDS RAISED

Torrey asserts the following four grounds for relief: 1) his guilty plea was involuntary because he "was not receiving [his] proper mental health medication and was easily pressured into accepting a plea bargain"; 2) his confession was coerced and he did not receive *Miranda* warnings; 3) his conviction was obtained by an unlawful arrest; and 4) he was denied the effective assistance of counsel because the trial court "should've granted [him] a *Marsden*

hearing when [he] complained about [his] counsel."  Torrey later filed a motion to dismiss

Claims 2 and 3 as unexhausted, which this Court granted.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule

that contradicts the governing law set forth" in controlling Supreme Court authority or "if the

state court confronts a set of facts that are materially indistinguishable from a decision" of the

Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v.*

*Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1865-66 (2010).  The holding must also be intended to be

binding upon the states; that is, the decision must be based upon constitutional grounds and not

on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3,

10 (2002).  Thus, where holdings of the Supreme Court regarding the issue presented on habeas

review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly

established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: Voluntariness of Torrey's plea

Torrey argues that his no contest plea was "unlawfully induced" and involuntary because he "was not receiving [his] proper mental health medication and was easily pressured into accepting a plea bargain."

Respondent is correct in asserting that Torrey failed to exhaust this claim.  In his direct appeal and petition for review, Torrey, through counsel, argued that the trial court erred in failing to hold a *sua sponte* competency hearing, and not that his plea was involuntary.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  To have properly exhausted his state court remedies, Torrey must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

-10-

However, this Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In this case, Torrey's claim is without merit.

It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently.  *Brady v. United States*, 397 U.S. 742, 747 (1970).  A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its "direct consequences." *Id*. at 755.  However, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Therefore, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Id.* at 74.

Here, Torrey's claim that his guilty plea was not entered knowingly and voluntarily because he suffered from bipolar disorder and depression is belied by the record.  Torrey signed a declaration attached to the plea agreement stating that he was freely and voluntarily pleading no contest and that he was not suffering from any disease or defect which kept him from understanding the plea form.  At the plea hearing, defense counsel represented that in her belief Torrey accepted the plea freely and voluntarily.  Torrey confirmed that he had initialed each aspect of the declaration, that he understood the terms of the plea, and stated that he had no

further questions related to the plea.  The court found that Torrey understood his constitutional rights, the nature of the crimes charged in the information and the specific consequences of the plea deal, and concluded that he understandingly and knowingly pled no contest.

The record of the plea hearing accordingly indicates that Torrey was aware of the "direct consequences" of his plea, especially in light of the fact that at the hearing on his motion to withdraw his plea, trial counsel testified that she had several conversations with Torrey about the plea offer and that he asked relevant questions with respect to the consequences of a no contest plea.  He thought the deal over, considered his reservations about how the plea would affect his family and employment prospects, and ultimately accepted the deal.  Nothing in the record indicates that Torrey's mental illness prevented him from weighing whether to go to trial or accept the negotiated plea.  *Brady*, 397 U.S. at 755.  Under AEDPA's deferential standard of review and the presumption of verity given to Torrey's plea proceedings, his conclusory allegation that he did not enter his plea voluntarily is insufficient to prevail on this claim.  Torrey is accordingly not eligible for relief on this ground.

Even construing Torrey's claim as renewal of his argument on direct appeal that the trial court failed to hold a *sua sponte* competency hearing, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se documents are to be liberally construed), his claim must fail.  It is undisputed that "the conviction of an accused person while he is legally incompetent violates due process."  *Pate v. Robinson*, 383 U.S. 375, 378 (1966).  "To be competent to stand trial, a defendant must have the 'capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'"  *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).  Where there is a "bona fide

-12-

doubt" as to a defendant's competence to stand trial, a court has a duty to hold a *sua sponte*

competency hearing.  *Pate*, 383 U.S. at 385-86.  The test for a bona fide doubt is "whether a

reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary

hearing is being reviewed, should have experienced doubt with respect to competency to stand

trial." *Maxwell*, 606 F.3d at 568 (citation omitted).  "Evidence of a defendant's irrational

behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all

relevant in determining whether further inquiry is required, and one of these factors standing

alone may, in some circumstances, be sufficient." *Id*. (quoting *Drope*, 420 U.S. at 180 (internal

quotation marks and brackets omitted)).  "The heart of competency to stand trial is a defendant's

present ability to consult with his lawyer with a reasonable degree of rational understanding and a

factual understanding of the proceedings against him." *Id*. (quoting *Dusky v. United States*, 362

U.S. 402, 402 (1960) (per curium)).

Although Torrey may suffer from depression and bipolar disorder, his alleged mental

illness and letter to the court were insufficient to raise a bona fide doubt as to his competency to

stand trial.  *See Davis v. Woodford*, 384 F.3d 628, 646 (9th Cir. 2004) (although petitioner may

have been depressed, his history, statements and conduct did not approach the "overwhelming

indications of incompetence" present in case law establishing the *sua sponte* duty to hold a

competency hearing).  As the Court of Appeal noted, trial counsel's testimony at the hearing on

the motion to withdraw the plea demonstrated that Torrey understood the nature of the

proceedings against him.  Torrey asked about possible eligibility for treatment as a sexually

violent predator and how the plea would affect outstanding fines of his.  He was concerned about

how pleading guilty would affect his family and employment prospects, but ultimately accepted

the plea after taking time to think it over and after multiple conversations with defense counsel.

Defense counsel testified that Torrey understood the plea offer.  There is nothing in the record to

indicate that Torrey did not understand the nature or consequences of the plea or the proceedings

against him.

In addition, Torrey suggested that defense counsel contact witnesses and subpoena work

and other records.  As the Court of Appeal noted, "[w]hile defendant's suggestions were not

fruitful, they nonetheless portray a defendant who could assist in his own defense."  Moreover, as

stated by the appellate court:

> [Torrey's] contention relies on his letter to the trial court, his former mother-in-law's unsworn statement, and a single, handwritten line in the probation report indicating that [he] has bipolar disorder.  The former mother-in-law's letter was unsworn hearsay. The line in the probation report contained no analysis, and appears to have been added after the report was written.  The court found that [Torrey's] claim that he had been pressured into accepting the People's offer was not credible.  [Torrey] did not present any documents or witnesses supporting his claims that he had been treated for bipolar disorder or had been committed pursuant to Welfare and Institutions Code section 5150, and the court did not have to credit those allegations.

Even accepting Torrey's allegations as true, they do not raise a bona fide doubt as to

Torrey's competence given that he was able to understand the nature of the proceedings against

him and assist in his own defense.  There were no objective indications that he was incompetent

to stand trial.  The trial court was not confronted with substantial evidence that Torrey was

incompetent, and accordingly the Court of Appeal's determination that the court did not err in

failing to hold a *sua sponte* competency hearing is not unreasonable or contrary to federal law.

*Cf. Pate*, 383 U.S. at 378-85 (trial court erred in failing to hold competency hearing where

defendant had a brick dropped on his head when he was young, often "appeared in a daze," "lost

his mind" according to his mother, was admitted to a psychiatric hospital for hearing threatening

voices, and had previously shot and killed his son and attempted suicide); *Maxwell*, 606 F.3d at

569-76 (trial court erred in failing to hold competency hearing where defendant was prescribed

antipsychotic drugs which he refused to take, attempted suicide during trial, required physical

restraint during one proceeding and was removed from court, was under psychiatric hold during

trial after being identified as "gravely disabled" and a danger to himself, and "communication

with his counsel was so strained that defense counsel stated that he was unable to develop a

theory of the case or make an opening statement, and [the defendant] asked that his attorney hand

over evidence helpful to the prosecution"); *Torres v. Prunty*, 223 F.3d 1103, 1109-10 (9th Cir.

2000) (defendant entitled to competency hearing where he requested that his attorney be fired,

believed counsel and the court were conspiring against him, threatened to assault his attorney,

insisted on being shackled and handcuffed, and continually disrupted trial until he was removed).

> Claim Four: *Marsden* hearing

Although Torrey states in Claim Four that he was denied the effective assistance of

counsel, the thrust of his claim is that the trial court erred in failing to *sua sponte* grant a

*Marsden* hearing after receiving Torrey's April 13, 2009, letter in which he complained about his

attorney.

In a *Marsden* motion, a defendant seeks substitute counsel on the ground that he or she

has an irreconcilable conflict with appointed counsel. *Schell v. Witek*, 218 F.3d 1017, 1021 (9th

Cir. 2000). "[F]orcing a defendant to go to trial with an attorney with whom he has an

irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel."

*Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). Accordingly, "[t]he denial without a

hearing of a motion to substitute appointed counsel based on allegations of an 'irreconcilable conflict' implicates the defendant's Sixth Amendment right to counsel" and is appropriate for habeas review. *Schell,* 218 F.3d at 1023. "[T]he ultimate constitutional question the federal courts must answer here is . . . whether . . . the conflict between [Torrey] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id*. at 1026. California and federal law therefore appear to be in accord that where a defendant announces a conflict with appointed counsel and expresses the need for substitute counsel, the court must meaningfully inquire as to the basis of that conflict and determine if substitute counsel is warranted.

Under California law, a defendant must have expressed an interest in seeking substitute counsel or indicated a complete breakdown in communication with counsel in order to trigger the duty of the trial court to conduct a meaningfully inquiry as to the basis of the conflict. *See People v. Lee*, 115 Cal. Rptr. 2d 828, 833 (Cal. Ct. App. 2002) ("Although the defendant need not file 'a proper and formal legal motion' he must express 'at least some clear indication . . . that he wants a substitution of attorney.'") (citation omitted)); *People v. Leonard*, 93 Cal. Rptr. 2d 180, 186 (Cal. Ct. App. 2000) (a trial court has "no obligation to initiate the *Marsden* inquiry *sua sponte* . . . [because] [a] trial court's duty to conduct the inquiry arises '*only when the defendant asserts directly or by implication* that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel'" (citation omitted) (emphasis in original)). Federal law appears to be in accord; there is no case law requiring a *sua sponte* inquiry into whether substitute counsel is required where the defendant made no request and there was no

significant conflict indicating that substitution might be a necessary remedy.  *Cf. Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005) (trial court should have conducted conflict inquiry where defendant informed the court that he did not trust his defense counsel and that they were ineffective, leading defendant to refuse to communicate with counsel).

       Here, Torrey's letter to the court did not indicate an irretrievably broken relationship with counsel or that he sought substitute counsel.  Rather, as the Court of Appeal found, Torrey's letter sought withdrawal of his plea, not substitution of counsel.  Torrey mainly asserted his innocence, claiming he was a "peaceful, responsible adult" who "believe[d] there is good in every one."  He admitted that he "willingly entered [the victim's] house [without] permission," but denied that he did so with the intent to burglarize or commit assault.  Although he did claim that his attorney pressured him into taking the plea, he also claimed police coerced him into confessing and that his mental illness led to "irrational thinking" which he wanted addressed at sentencing.  The thrust of Torrey's letter was not that he could not proceed with appointed counsel, but that he sought to withdraw his plea on multiple grounds.  Accordingly, the Court of Appeals' conclusion that the trial court did not err in failing to hold a *sua sponte Marsden* hearing was not contrary to, or an unreasonable application of, federal law.

       In any event, had there been any error it would have been harmless.  Torrey's complaints about his attorney–that she pressured him into taking the deal, failed to subpoena mental health and work records, and informed him that she would not be calling his friends as witnesses–were adequately addressed at the hearing on the motion to withdraw his plea.  Trial counsel testified that she did not pressure Torrey into taking the plea, but that she explained the evidence against him and the significance of his confession to the police, and that if he went to trial he could be

-17-

subject to life imprisonment.  She further testified that she told Torrey that she was not

subpoenaing his records because there was evidence in those records that Torrey had bragged

about having sex with underage girls, and that police had even interviewed one girl who stated

that she did have sexual relations with Torrey.  Trial counsel's testimony does not point to an

irretrievable break down in the attorney-client relationship, but rather indicates that counsel made

tactical choices that Torrey apparently disagreed with or misperceived.  Accordingly, Torrey is

not entitled to relief on this claim either.

## V. CONCLUSION

Torrey is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 14, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

-18-